MARY DRYOVAGE (CA SBN 112551)
Law Offices of Mary Dryovage

600 Harrison Street, Suite 120,
San Francisco, CA 94107
Telephone:    415 593-0095
Fax:              415 593-0096
Email:          mdryovage@igc.org

Attorney for Plaintiff
ARROLENE C. BURRELL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARROLENE C. BURRELL,<br><br>                    Plaintiff,<br><br>v.<br><br>R. JAMES NICHOLSON, SECRETARY FOR THE U.S. DEPARTMENT OF VETERANS AFFAIRS,<br><br>                    Defendants. | **No.**<br><br>**COMPLAINT - EMPLOYMENT DISCRIMINATION BASED ON RACE/COLOR AND REPRISAL**<br><br>**JURY TRIAL REQUESTED** |

## I.

## NATURE OF THE ACTION

1.      This action is brought by Plaintiff  ARROLENE C. BURRELL (hereafter "BURRELL"), an employee of the U.S. DEPARTMENT OF VETERANS AFFAIRS, employed by R. JAMES NICHOLSON, SECRETARY FOR THE U.S. DEPARTMENT OF VETERANS AFFAIRS, (hereafter "Defendant", "VA" OR "NICHOLSON") for employment discrimination based on her race/color (African-American/Black) and reprisal, by forcing out all African-American managers into retirement and/or lower status position without legitimate justification, demotion from Chief Social Work Service and replacement by a person with a fake-Ph.D from an unaccredited university, downgrading of her performance rating, reassignment of her position, denial of within grade increase,  hostile work environment and constructive discharge/forced retirement.

2.    This action is brought under the Civil Rights Act of 1964, 42 U.S.C. §2000e-16 *et seq*. as amended (Title VII) and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*. Plaintiff seeks backpay, front pay and compensatory damages, as well as a declaratory judgment and injunction to restrain defendant employer from committing prohibited personnel practices, policies, customs and usages, from discriminating and retaliating against plaintiff and other employees of the Department of Veteran Affairs based on their race/color and/or reprisal. Plaintiff seeks injunctive relief requiring defendant employer to take affirmative and effective steps to remove and otherwise discipline managers who have failed to comply with Title VII. Plaintiff seeks injunctive relief requiring the defendant employer to take specific actions designed, implemented and confirmed by qualified non-government consultants to ensure that all supervisory employees are adequately trained to identify, investigate and stop situations and complaints. Such specific actions, include, but are not limited to:

     a.    allocation of significant funding and trained staff to implement all changes within two years;

     b.    removal or demotion of all managers who have violated the agency's policies and failed to meet their legal responsibility to promptly investigate complaints or to take effective action to stop and deter prohibited personnel practices against employees;

     c.    establishing and strictly measuring EEO compliance as a critical element in every manager's performance standards;

     d.    creating a process for the prompt investigation of harassment and reprisal complaints separate from the agency's process;

     e.    mandatory and effective training for all employees and managers on discrimination and reprisal issues, investigations and appropriate corrective actions; and

     f.    eliminating the backlog of current EEO cases alleging discrimination, harassment and reprisal.

## II.

## JURISDICTION AND VENUE

3.      The jurisdiction of this Court is based upon the Civil Rights Act of 1964, 42 U.S.C. §2000e-16 *et seq*., 28 U.S.C. Section 1331, 1337, 1343, 1345 and 2401(a),  which grant district courts jurisdiction over actions alleging unlawful and discriminatory employment practices by federal agencies and provides for judicial review of cases involving race discrimination and reprisal. Many of the unlawful practices alleged in this complaint occurred in the County of San Francisco, which is situated in the Northern District of California.

## III.

## PLAINTIFF

4.      Plaintiff ARROLENE C. BURRELL, DOB 1/6/1950,  is an African-American/Black female who was employed by the U.S. DEPARTMENT OF VETERANS AFFAIRS since 1975, and as Chief of Social Work Service, GM-13, beginning 1993. Her performance was satisfactory or better, at all times material to this action. She was constructively terminated  from the U.S. DEPARTMENT OF VETERANS AFFAIRS, on or around October 15, 2005.

## IV.

## DEFENDANT

5.      Defendant R. JAMES NICHOLSON, SECRETARY FOR THE U.S. DEPARTMENT OF VETERANS AFFAIRS, is the head of an executive agency within the meaning of the Civil Service Reform Act of 1978, 5 U.S.C. 1065 and the Civil Rights Act, as amended, 42 U.S.C. 2000e-16.  As such, defendant has the full responsibility for administration of all programs within the agency, including the employment policies and practices of the DEPARTMENT OF VETERANS AFFAIRS, in all regions and is in a position to create and implement a policy to eliminate and prevent any form of discrimination and reprisal and to provide complete relief for plaintiff.  Defendant is sued in his official capacity.

## V.

## EXHAUSTION OF REMEDIES

6.      On September 20, 2004, Plaintiff ARROLENE C. BURRELL filed the informal EEO

1  complaint, alleging discrimination on the basis of her race/color (African American/Black)

2  alleging discrimination based on the removal/change of her position and title, when her GM

3  rating was taken away and she was reassigned to other positions, to wit, she was assigned from

4  the supervision of the Chief of Staff to the Chief of Mental Health in March 2002, and back to

5  the Chief of Staff in September 2002, then to the supervision of Alan Perry, Director of the

6  Fresno VA in June 2003; on September 9, 2003, her title was changed from Supervisory Social

7  Worker, Series 185 to Special Assistant to the Director, Series 301. Agency Report of

8  Investigation (ROI), Tab A-3a. A formal complaint was filed on November 17, 2004 regarding

9  those issues.

10  7.      On October 5, 2004, shortly after learning that plaintiff engaged in protected activity by

11  filing an informal complaint, Alan Perry, Director of the Fresno VA informed Plaintiff that her

12  former position as Supervisory Social Worker, GS -0185-13/13 would be announced, Vacancy

13  Announcement No. 04-42. See ROI, Tab A-9. Her performance rating was downgraded to "fully

14  successful", and she was given a new position description a few days prior to the close of the

15  rating period and rated according to these new standards for the entire rating period. On February

16  23, 2005, she filed a formal complaint alleging discrimination on the basis of race/color

17  (African-American/Black) and reprisal re: non-selection for Chief Social Work Service,

18  downgrading of her performance rating, reassignment of her position, denial of within grade

19  increase and constructive discharge/forced retirement. Those complaints were consolidated on

20  February 28, 2005. See ROI, Tab A-9. Brian Hemenway was appointed as investigator in March

21  2005 and released a Report of Investigation ("ROI"). (Investigative File A-11, Letter to Alan

22  Perry from, dated March 28, 2005) A timely request for hearing was filed and the case was

23  assigned to Administrative Judge Marianna Warmee. Judge Warmee issued a Notice Of Intent

24  To Issue A Decision Without A Hearing on August 15, 2006. On August 25, 2006, Complainant

25  filed an opposition to Notice Of Intent To Issue A Decision Without A Hearing issued on August

26  15, 2005.

27  8.      On December 23, 2005, BURRELL filed a motion to add a claim of to the issues in the

28  pending complaints when the Agency BURRELL's working environment so intolerable that she

*Burrell v. Nicholson, Secretary of Dept. of Veterans Affairs*
Complaint - Employment Discrimination                                                    Page 4

1  was forced to retire. The issue was referred to the Merit Systems Protection Board, who issued a

2  decision finding that it did not have jurisdiction over the claim at which point, it was sent back to

3  the EEOC to be decided together with the other issues in the case. On May 23, 2006, Plaintiff

4  filed a motion to add a claim of hostile work environment based on Agency's harassment,

5  including rekeying her office without prior notice, destroying her personal property and patient

6  files and removing her from her office into another shared office where she did not have the

7  privacy to perform her job, she was given outmoded computer equipment and subjected to

8  ostracism and ridicule.

9  9.       On May 31, 2007, the Defendant filed a motion for partial decision without a hearing and

10  the Plaintiff timely filed a motion in opposition to the Defendant's partial decision without a

11  hearing.  On or around August 24, 2007, Plaintiff received a decision without a hearing from the

12  Office Of Federal Operations of the Equal Employment Opportunity Commission dated August

13  21, 2007. It has been over 180 days since she filed the formal complaint and there has been no

14  hearing or final agency decision on the original complaint. Plaintiff has fully exhausted her

15  administrative remedies on all claims raised in the administrative process.

16  **VI.**

17  **STATEMENT OF FACTS**

18  10.      Plaintiff BURRELL is a member of a protected group based on her race/color and

19  reprisal for protected activities

20  11.      Plaintiff  BURRELL fully exhausted her administrative remedies for EEO Case Nos.

21  200P-0570-2004104331and 200P-0570-2005101188 Consolidated Cases when the Office of

22  Federal Operations issued a Decision Without A Hearing.

23  12.      ARROLENE BURRELL, served as a social worker for the Department of Veterans

24  Affairs for 30 years.

25  13.      BURRELL was promoted to Supervisory Social Worker GS-12 in Memphis on October

26  11, 1987. See ROI, Tab B-1, Burrell affidavit, page 5-6.

27  14.      In 1991, BURRELL was laterally transferred to the Fresno VA as a Supervisory Social

28  Worker GS-12 and promoted to Chief of Social Work Service. *Id.* at 6. This position was

1    upgraded to a GM-13 in 1993. *Id.*

2    15.    At all times material to this action, Plaintiff BURRELL was qualified for the position. *Id.*

3    16.    At all times material to this action, Plaintiff BURRELL performed her duties in a

4    satisfactory manner.

5    17.    At all times material to this action prior to October 15, 2005, defendant took no

6    disciplinary action against Plaintiff BURRELL and had no valid documented criticism of her

7    work.

8    18.    Mr. Perry, the same Director of the Fresno VA who led the decentralization of the Social

9    Work Service branch,  gave BURRELL a Special Contribution Award on December 19, 2003

10   and on December 15, 2004 for Superior Performance in FY 2004. See Declaration of Burrell in

11   Support of Motion to Add Hostile Workplace claim, Exhibit A Special Contribution Award (FY

12   2003) and Exhibit B, Special Contribution Award for Superior Performance (FY 2004).

13   19.    Ms. Burell had superior performance in her 30 year career with the Department of

14   Veterans Affairs.  See ROI, Tab B-2, Perry affidavit, page 20, 23 and 24. However, Mr. Perry

15   lowered her performance rating to fully successful on December 20, 2004.  See ROI, Tab B-2,

16   Perry affidavit, page 17-18.

17   20.    In 2000, Mr. Alan S. Perry, Director of the Fresno VA decentralized the Social Work

18   Service. See ROI, Tab B-1, Burrell affidavit, page 7.

19   21.    After the de-centralization, BURRELL's title remained Chief, Social Work Service or

20   Chief Social Worker and performed the other functions for the Chief, Social Work Service or

21   Chief Social Worker position until September, 2004. *Id.* BURRELL also continued to provide

22   supervision of the social work staff. *Id.*  However, after the de-centralization, BURRELL's staff

23   was reassigned and her hiring authority was curtailed. *Id.*

24   22.    In 2004, Mr. Perry re-centralized the Social Work Service. *Id.* The non-African-American

25   former Service Chiefs were reinstated in their former positions.

26   23.    On August 23, 2004, Mr. Perry changed BURRELL's position description and

27   also changed her occupation code from Series 0185 (Supervisor Social Work) to Staff Assistant,

28   Office of Director Series 0301 (misc administration)See ROI, Tab B-1, Burrell affidavit, page 12.

*Burrell v. Nicholson, Secretary of Dept. of Veterans Affairs*
Complaint - Employment Discrimination                                    Page 6

1    BURRELL was not given any reason, based on misconduct or performance, for her demotion.

2    24.    On September 9, 2004, the Agency provided BURRELL with yet another position

3    description that conformed to the occupation code from Series 0185 (Supervisor Social Work),

4    yet her title was changed from Supervisory Social Worker to Social Worker. See e-mail from Pat

5    A. Hillsgen, Chief of Human Resources, to Carolyn Hughes dated March 18, 2005.

6    25.    The Agency removed three other African American chiefs from their supervisory

7    positions during this de-centralization. Agency removed the supervisory duties of Dr. Dorythea

8    Williams, Chief of Speech and Audiology and William Youngblood, Director of the Home Base

9    Primary Care. See ROI, Tab B-2, Perry affidavit, page 14. Mike Blathers, the African American

10   Chief of Police and Security Service, is also not serving in a supervisory capacity the Fresno VA.

11   26.    During this decentralization process however, Caucasian chiefs were allowed to

12   retain their supervisory status. Ms. Catherine Crowe, Chief of Prosthetics was allowed to retain

13   her supervisory duties. See ROI, Tab B-2, Perry affidavit, page 14. Ms. Crowe's position was not

14   announced as a vacancy and she did not have to compete to keep her title or supervisory duties.

15   See ROI, Tab B-1, Burrell affidavit, page 21-22. Similarly, the Agency allowed Dr. Matthew

16   Bautista (Caucasian male), Chief of Psychology Service, to retain his title of supervisory

17   psychologist and to retain his supervisory duties. *Id.* Dr. Bautista did not have to compete for his

18   position either. *Id.*

19   27.    On September 20, 2004, BURRELL filed an informal complaint of discrimination based

20   on age (DOB January 1950) race/color (Black/African American) based on her change of

21   position and series. (See ROI, Tab A-3a, EEO Counselor's Report-200P-570-2004104331).

22   EEO Counselor Vickye E. Gammage interviewed Mr. Perry regarding the complaint and because

23   the Agency offered no resolution, BURRELL was given her final interview on October 20, 2007.

24   A formal complaint was filed on November 17, 2004 regarding those issues. See ROI.

25   28.    On October 6, 2004, the Agency announced a vacancy for Complainant's position

26   as Chief, Social Work Service. (See ROI, Tab C-7, Vacancy Announcement 04-42).

27   29.    The  DEPARTMENT OF VETERANS AFFAIRS selected Carolyn Hughes, a Caucasian

28   woman, to replace BURRELL on December 30, 2004 as Chief, Social Work Service GS-0185-

*Burrell v. Nicholson, Secretary of Dept. of Veterans Affairs*
Complaint - Employment Discrimination                                                    Page 7

13. *Id.* at 10-13. Ms. Hughes had no experience or training in the Department of Veterans Affairs social work. (See ROI, Tab C-9, Selectee's Application for Vacancy Announcement 04-42). The sole reason provided for hiring Ms. Hughes was that she had a Ph.D. from an unaccredited university. Under the DEPARTMENT OF VETERANS AFFAIRS regulations, a degree from an unaccredited university, as defined by the U.S. Department of Education website, is not recognized.

30.    Ms. Hughes did not have sufficient time in grade at the lower level of GS-12, to qualify for the GS-13 position under the DEPARTMENT OF VETERANS AFFAIRS regulations.

31.    Mr. Perry also has shown a pattern of hiring less qualified Caucasian candidates over African American employees. Around July 1999, Mr. Perry appointed Ms. Lisa Rogers (Caucasian), as acting Chief of Human Resources and later selected her as the chief. (See ROI, Tab B-1, Burrell affidavit, page 27). Mr. Perry did not select Ms. Marva Rogers (African American) for that position despite the fact that Ms. Rogers had multiple years of experience in human resources. *Id.* Also around November 1999, Mr. Perry disregarded the selection panel's recommendation to hire Ms. Estella Murray (African American), a GS-14 Chief of Food and Nutrition from Long Beach VA, who applied to be the GS-13 Chief of Food and Nutrition at the Fresno VA. (See ROI, Tab B-1, Burrell affidavit, page 28). Mr. Perry hired a Caucasian candidate, Ms. Catherine Moynihan, who interviewed for the position . *Id.* The interviewing panel did not recommend Ms. Moynihan. *Id.* Also Ms. Moynihan had no experience as a chief of a division that would make her better qualified than Ms. Murray for the position. *Id.*

32.    After the decentralization, the Agency continued to provide performance appraisals of Caucasian employees such as Ms. Crowe and Dr. Bautista, on Executive Career Field, VA form 3482-E, which is used to evaluate mid-managers and supervisors' performance. (See ROI, Tab B-1, Burrell affidavit, page 26). However, BURRELL was evaluated on VA-Form 0750, which was used to evaluate non-supervisors. *Id.* and (See ROI, Tab B-2, Perry affidavit, page 20-21).

33.    On February 5, 2005, BURRELL was reassigned to work under the supervision of Carolyn Hughes, Chief, Social Work Service, effective February 7, 2005. (See ROI, Tab B-1, Burrell affidavit, page 37). She was then subjected to a series of hostile actions taken by Ms.

1   Hughes with Mr. Perry's knowledge and ratification (Investigative File, A-1, Examination of

2   Burrell, pp. 45; Correction Sheet, p. 24; Investigative File C-14, Supplemental Declaration of

3   Burrell, including 17 pages plus supporting documentation), which include the rekeying of her

4   office without prior notification (*id*.); Hughes came into her office while she was working and

5   asked for the key on her wrist (*id*.);  BURRELL's possessions were suddenly removed from her

6   office when she was on sick leave without prior notification (*id*.); her office was destroyed when

7   Hughes instructed VA employees to throw away many of her personal possessions,

8   documentation needed for her job, and work files  (*id*. Supp. Decl. p. 16 and Exhibit K-1, K-2,

9   K-3, K-4); moving her to a small shared office with outmoded equipment (*id*.); assigned

10  denigrating work (*id*.);  treated with complete and utter disrespect (*id*.).

11  34.     On February 5, 2005, BURRELL was reassigned to work under the supervision

12  of Carolyn Hughes, Chief, Social Work Service, effective February 7, 2005. (See ROI, Tab B-1,

13  Burrell affidavit, page 37).  She was then subjected to a series of hostile actions taken by Ms.

14  Hughes with Mr. Perry's knowledge and ratification (Investigative File, A-1, Examination of

15  Burrell, pp. 45; Correction Sheet, p. 24; Investigative File C-14, Supplemental Declaration of

16  Burrell, including 17 pages plus supporting documentation).

17  35.      On May 27, 2005, Mr. Perry changed BURRELL's title from Supervisory Social

18  Worker GM-13 to Social Worker GS-13. BURRELL was issued a Form 50 re: reassignment

19  from Social Worker GM-13 rating and replacement with GS-13 rating. (See Investigative File C-

20  15,  Memo dated May 27, 2005 from Chief, Human Resources to Burrell, and Form 50,

21  Notification of Personnel Action, dated May 27, 2005).

22  36.     On September 14, 2005, Ms. Hughes provided BURRELL a thirty day Performance

23  Assistance Plan, which had an effective date of September 9, 2005. See Agency Response in

24  Support of Notice of Intent to Issue a Decision without a Hearing dated May 31, 2006, Ex 3

25  (Declaration of Appellant Arrolene Burrell Re: Constructive Discharge/Forced Resignation

26  Claim), pg 9.  This notification failed to provide BURRELL any opportunity to respond to the

27  allegations set forth in the Performance Assistance Plan. *Id.* at 10.

28  37.     The Performance Assessment Plan was given to BURRELL four days prior to

1    the date of her within grade increase (WIGI) from GS-13, Step 9 to GS-13, Step 10. *Id.* at 10.

2    This was in violation of the VA/AFGE Master Agreement contract which states that notice of

3    denial of  WIGI  and opportunity to improve must be given 60 days prior to the effective date. *Id.*

4    Because of this policy violation, on September 18, 2005, BURRELL was given a within grade

5    increase by the Agency. *Id.* at 11. However, the next pay period ending in October 15, 2005,  the

6    Agency retracted the WIGI. *Id.* In spite of BURRELL's exemplary performance for thirty years,

7    the Agency gave BURRELL a negative performance rating and placed her on a performance

8    assessment plan in September 2005 which lead to a denial of her within grade increase. See

9    Agency Response in Support of Notice of Intent to Issue a Decision without a Hearing dated May

10   31, 2006, Ex 3 (Declaration of Appellant Arrolene Burrell Re: Constructive Discharge/Forced

11   Resignation Claim), pg 9-10.

12   38.     On September 27, 2005, BURRELL submitted a medical certification statement

13   and requested advance sick leave. *Id.* Although BURRELL had 228.75 hours of annual leave and

14   77.75 sick leave remaining, she was placed on AWOL on September 26, 2007 and was placed on

15   LWOP from September 27, 2005 until October 25, 2005. Ex 1, Memo from Carolyn Hughes to

16   Arrolene Burrell dated October 3, 2005 and Ex 2, CSRS Benefit Estimate Report, Arrolene

17   Burrell dated October 25, 2005. The medical certification from BURRELL's treating physician

18   was rejected without explanation and the Agency notified her that she would be placed on

19   AWOL or LWOP status unless she requested FMLA leave. *Id.*  Meanwhile, BURRELL's health

20   condition, that is blood pressure and stress, worsened and her physician directed her not to return

21   to work until her health improved. *Id* at 15-16.

22   39.     The Agency constructively discharged BURRELL when it unilaterally discontinued her

23   pay for Pay Period 20. *Id.* at Attachment A, Ex F-2. Because the VA curtailed BURRELL's

24   paycheck and denied her medical leave, she was led to believe that the Agency would remove her

25   from federal service and take away her retirement. *Id.* at 16. Therefore, on October 25, 2005,

26   BURRELL went to the VA Human Resources Department to explore the option of filing her

27   retirement and retired from federal service on October 25, 2007. *Id.*

28   40.     In 2007, two years after BURRELL constructively terminated by the Defendant, the

1    DEPARTMENT OF VETERANS AFFAIRS threatened to deduct additional money from

2    BURRELL's retirement pay. Plaintiff was never notified of the specific reasons for such

3    deductions despite repeated requests from the Plaintiff for an itemized account of the deductions.

4    41.    Defendant, the DEPARTMENT OF VETERANS AFFAIRS sent notification of the

5    alleged overpayment caused by the WIGI award being given to BURRELL for one pay period to

6    the Department of the Treasury, Internal Revenue Service, causing that money to be deducted

7    from her income tax return in violation of federal regulations. The  Defendant, the

8    DEPARTMENT OF VETERANS AFFAIRS has admitted that this was done in error, after

9    repeated inquiries from her Congressional Representative's Office, Mr. Nunez.

10                                    **VII.**

11                              **FIRST CLAIM**

12          **(UNLAWFUL DISCRIMINATION BASED ON RACE/COLOR)**

13    42.    Paragraphs 1 through 41 above are hereby incorporated by reference as though fully set

14    forth in this claim.

15    43.    Defendant has unlawfully discriminated against Plaintiff BURRELL  based on her

16    race/color (African-American/Black), in violation of Title VII of the Civil Rights Act of 1964, 42

17    U.S.C.§ 2000e-16 *et seq*. as amended.

18    44.    Plaintiff  BURRELL is a member of a protected group based on her race/color (African-

19    American/Black).

20    45.    Defendant treated Plaintiff BURRELL less favorably than similarly situated employees

21    who are not African-American/Black.

22    46.    Defendant has discriminated against Plaintiff BURRELL in the terms and conditions of

23    her employment on the basis of her protected group status, in violation of Title VII.

24    47.    Defendant has a pattern and practice of using the investigative process and other

25    procedures to deny African-American employees assignments, promotions and other employment

26    opportunities on the basis of their race, in violation of Title VII.

27    48.    Defendant has a pattern and practice of failing to prevent supervisors and managers from

28    creating a hostile work environment and harassing employees African-American employees, in

1   violation of Title VII.

2   49.    Plaintiff BURRELL is now suffering and will continue to suffer irreparable injury and

3   monetary damages as a result of defendants discriminatory practices unless and until the Court

4   grants relief.

5                                              **VIII.**

6                                         **SECOND CLAIM**

7               **(UNLAWFUL DISCRIMINATION BASED ON REPRISAL)**

8   50.    Paragraphs 1 through 49 above are hereby incorporated by reference as though fully set

9   forth in this claim.

10  51.    Defendant has retaliated against Plaintiff BURRELL , *inter alia,* by removing her from

11  the position of Chief of Social Work, non-selecting her for the position of Chief of Social Work,

12  down-grading her performance, placing her on a performance improvement plan, denying her a

13  within grade increase, denying her medical leave and vacation pay that she already accrued,

14  creating a hostile work environment, and threatening to deduct funds from her retirement pay

15  based on her EEO complaint alleging discrimination,  in violation of Title VII of the Civil Rights

16  Act of 1964, 42 U.S.C.§  2000e-16 *et seq*. as amended.

17  52.    Defendant, through her agents, Plaintiff's supervisors, were aware that Plaintiff

18  BURRELL filed EEO complaints to raise issues regarding harassment based on her

19  age/race/color (over 40, African-American/Black).

20  53.    Defendant has a pattern and practice of using the EEO process and other procedures to

21  deny employees who engage in protected activities assignments, promotions, benefits and other

22  employment opportunities in reprisal, in violation of Title VII and the ADEA.

23  54.    Defendant's actions toward Plaintiff BURRELL  and other employees who engage in

24  protected activity constitutes a violation of 29 C.F.R. 1614, Title VII of the Civil Rights Act of

25  1964, as amended.

26  55.    Plaintiff BURRELL is now suffering and will continue to suffer irreparable injury and

27  monetary damages as a result of defendants retaliatory practices unless and until the Court grants

28  relief.

### IX.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ARROLENE C. BURRELL respectfully prays that this Honorable Court grant the following relief:

1.     Issue a permanent injunction to defendant U.S. DEPARTMENT OF VETERANS AFFAIRS:

    a.     Requiring defendant NICHOLSON to abolish race discrimination and reprisal at the U.S. DEPARTMENT OF VETERANS AFFAIRS;

    b.     Requiring allocation of significant funding and trained staff to implement all changes within two years;

    c.     Requiring removal or demotion of all managers who have violated the agency's policies and failed to meet their legal responsibility to promptly investigate complaints or to take effective action to stop and deter prohibited personnel practices against employees;

    d.     Establishing and strictly measuring EEO compliance as a critical element in every manager's performance standards;

    e.     Creating a process for the prompt investigation of harassment and reprisal complaints separate from the agency's process;

    f.     Requiring mandatory and effective training for all employees and managers on discrimination  issues, investigations and appropriate corrective actions; and,

    g.     Eliminating the backlog of current EEO cases alleging discrimination, and harassment.

2.     Issue an order requiring Defendant to retroactively restore Plaintiff to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation.

3.     For such damages, including back pay, front pay and benefits, overtime compensation as plaintiff is entitled to under Title VII and in amounts to be proven at trial,

1   including  liquidated damages as allowed under 29 U.S.C. § 216(b) and prejudgment interest as

2   appropriate;

3        4.      For other and further damages, including compensatory damages for plaintiff's

4   emotional distress, as may be proven at trial;

5        5.      For an order commanding defendant to cease and desist from any employment

6   practice which discriminates against plaintiff or others on the basis of race/color;

7        6.      For an award of costs of suit including reasonable attorney's fees, including fees

8   under 29 U.S.C. § 216(b); and

9        7.      For such other and further relief as the Court may consider just and proper.

10              Respectfully submitted,

11              Law Offices of Mary Dryovage

12                 /s/
    DATED: September 20, 2007    By:  _____

13              MARY DRYOVAGE
                Attorney for Plaintiff

14

15  **DEMAND FOR TRIAL BY JURY**

16       Plaintiff hereby demands a jury trial for each claim herein for which she has a right to a

17  jury.

18              Respectfully submitted,

19              Law Offices of Mary Dryovage

20                 /s/
    DATED: September 20, 2007    By:  _____

21              MARY DRYOVAGE
                Attorney for Plaintiff

22

23

24

25

26

27

28

| | |
|---|---|
| ARROLENE BURRELL, | Docket No. |
| Plaintiff, | |
| v. | |
| R. JAMES NICHOLSON, SECRETARY OF DEPARTMENT OF VETERANS AFFAIRS, | **CERTIFICATE OF SERVICE** |
| Defendant. | |

      I am a citizen of the United States and have an office in the County of San Francisco; I am over the age of eighteen years and not a party to the above-entitled action; my address is 600 Harrison Street, Suite 120, San Francisco, CA 94107

      On September 20, 2007, I served the within COMPLAINT, SUMMONS, CIVIL COVER SHEET, on the parties in said action by MAILING a true copy thereof enclosed in a sealed envelope, first class postage fully prepaid to the following address:

R. JAMES NICHOLSON,
U.S. DEPARTMENT OF VETERANS AFFAIRS
810 Vermont Ave NW
Washington, D.C. 20420         Certified Mail No. 7003 3110 0001 4475 5807

U. S. ATTORNEY GENERAL,
U.S. DEPARTMENT OF JUSTICE,
Main Building, Room 51
10th and Constitution Ave. N.W.
Washington, D.C. 20530         Certified Mail No. 7003 3110 0001 4475 5814

Assistant U.S. Attorney
Civil Division- 9th Floor
450 Golden Gate Avenue
San Francisco, CA 94102         via hand delivery

      I declare under penalty of perjury that the foregoing is true and correct and was executed on September 20, 2007 at San Francisco, California.

_____